UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **DESOTO PLAZA ASSOCIATES L L C** | **CIV. ACTION NO. 5:23-01191** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **4 STAR GENERAL CONTRACTING INC** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) filed by Defendant 4 Star General Contracting. [doc. #9]. The motion is opposed. [doc. #16].

For reasons assigned below, it is recommended that 4 Star's motion be GRANTED IN PART AND DENIED IN PART.

### Background

This suit arises from a contract dispute concerning the repair of a shopping center roof. DeSoto Plaza Associates, LLC ("DeSoto") filed the instant suit against 4 Star General Contracting, Inc. ("4 Star") on August 31, 2023, bringing claims for breach of contract, fraud in the inducement, and declaratory judgment. Complaint [doc. #1]. The next day, September 1, 2023, DeSoto filed an amended complaint ("the Complaint"). Amended Complaint [doc. #5]. Now before the court is a motion to dismiss filed by 4 Star on September 27, 2023. M/Dismiss [doc. #9].

The genesis of this dispute is a storm occurring on or about April 24, 2020, in northwestern Louisiana. Amended Complaint [doc. #5, p. 3]. Around that date, a shopping center in Mansfield, Louisiana, owned by DeSoto ("the Property") suffered storm damage to its

1

roof. *Id.* The damage went unnoticed by DeSoto until June 2021. *Id.* Eight months later, in February 2022, 4 Star contacted DeSoto to offer its services in prosecuting an insurance claim for the damages to the Property and performing related repairs. *Id.*

Negotiations between the parties progressed until on April 13, 2022, 4 Star emailed DeSoto a one-page Service Agreement ("the Service Agreement") to retain the services of 4 Star. *Id.* 4 Star produced an addendum ("the Addendum") to that document on April 21, 2022. *Id.* That same day, DeSoto executed both the Service Agreement and the Addendum (collectively "the Contract"). *Id.*; *see also* Contract [doc. #5-3, pp. 2-3].

The Contract provides that 4 Star will develop a full scope of damage for the Property, determine "a reasonable method of repair," "create an estimate for the required scope of work," and "perform the Final Scope of Work" after receipt of insurance proceeds and execution of a "Construction Agreement." Contract [doc. #5-3, p. 2]. Under the Contract, DeSoto is "not responsible for any overages or penalties associated with the carrier or 4 Star . . . ." *Id.*

After execution of the Contract, 4 Star inspected the Property, created a full scope of damage, and engaged with DeSoto's insurer. Amended Complaint [doc. #5, p. 4]. In May 2022, DeSoto's insurer issued an estimate for repairs, ultimately wiring DeSoto $548,914.84 on July 28, 2022. *Id.* 4 Star submitted a supplemental estimate to DeSoto's insurer on August 26, 2022, but this request for further funds was denied. *Id.* at p. 5.

There are no allegations that further action was taken pursuant to the Contract until mid-2023. Then, on July 6, 2023, 4 Star sent DeSoto a demand letter seeking liquidated damages of $175,800 for alleged breach of contract. *Id.* 4 Star indicated that it would pursue arbitration to recover "the full amount of $586,000" should DeSoto fail to meet the demand. *Id.* The rights asserted in this letter were predicated upon "a set of Terms and Conditions" ("the Terms and

2

Conditions") which "were not executed, acknowledge or received by DeSoto prior to the July 6 letter." *Id.* at pp. 5-6.

4 Star filed the instant motion to dismiss on September 27, 2023. M/Dismiss [doc. #9]. In support of the motion, 4 Star argues that DeSoto has failed to state claims for both breach of contract and fraud, and, in the alternative, seeks a more definite statement concerning the fraud claim. Memorandum in Support of M/Dismiss [doc. #10]. The movant further argues that the request for declaratory relief should be dismissed for lack of ripeness or, in the alternative, as redundant of the breach of contract claim. *Id.* DeSoto filed an opposition memorandum on October 19, 2023. Memorandum in Opposition to M/Dismiss [doc. #16]. This was followed shortly thereafter on October 26, 2023, with a reply from 4 Star. Reply to Opposition to M/Dismiss [doc. #17].

Briefing is complete. Accordingly, this matter is ripe.

## Analysis

I. **Legal Standard**

a. *Rule 12(b)(1)*

The Federal Rules of Civil Procedure sanction dismissal where the presiding court lacks subject-matter jurisdiction.[1] FED. R. CIV. P. 12(b)(1). Such jurisdiction may be found lacking based upon (a) the complaint alone; (b) the complaint supplemented by undisputed facts in the record; or (c) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). As a Rule 12(b)(1) motion concerns the trial court's

---

[1] The federal courts are courts of limited jurisdiction and cannot adjudicate claims absent a statutory conferral of jurisdiction. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

3

jurisdiction, the court is free to weigh relevant evidence and satisfy itself that it has power to hear the case. *Kling*, 60 F.4th at 284. A Rule 12(b)(1) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *In re FEMA*, 668 F.3d at 287. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the jurisdictional attack should be resolved first. *Ramming*, 281 F.3d at 161.

    b.    *Rule 12(b)(6)*

The Federal Rules of Civil Procedure also sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a motion to dismiss on this basis, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). In conducting this analysis, courts must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

    *c.*    Rule 9(b)

Plaintiffs alleging fraud or mistake face additional pleading requirements. Namely, they must "state with particularity the circumstances constituting [the] fraud or mistake." FED. R. CIV. P. 9(b). To satisfy this requirement, plaintiffs must plausibly plead facts establishing the time, place, and contents of the false representation, the identity of the person making the misrepresentation, and what that person obtained thereby. *IAS Serv. Grp., L.L.C. v. Jim Buckley & Assoc., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018); *see also United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F.App'x 622, 625 (5th Cir. 2015) ("Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Although a fraud claim may arise under state law, pleadings in federal court must still comply with this standard. *See Colonial Oaks Assisted Living Lafayette. L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 693-94 (5th Cir. 2020) (applying Rule 9(b) standard to fraud claim arising under Louisiana law).

    *d.*    Rule 12(e)

Federal Rule of Civil Procedure 12(e) allows parties to move "for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). Motions for a more definite statement may be granted if the complaint is so excessively vague or ambiguous as to seriously prejudice the defendant in attempting to answer it. *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D.La. 2006).

II. **DeSoto's Claims**

DeSoto brings claims for breach of contract, fraud in the inducement, and declaratory judgment. 4 Star has moved to dismiss all three claims. The undersigned analyzes each claim in turn, ultimately recommending that 4 Star's motion to dismiss should be granted as to the breach of contract claim and denied as to the other two. It is further recommended that 4 Star's motion for a more definite statement concerning the fraud claim be granted.

a. *Breach of Contract*

At the heart of the instant dispute is DeSoto's breach of contract claim. Amended Complaint [doc. #5, pp. 6-7]. DeSoto alleges that 4 Star "failed to perform the full scope of work [contemplated in the Contract]" while simultaneously seeking to compel DeSoto to pay overages. *Id.* at p. 6. 4 Star has moved to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6). Memorandum in Support of M/Dismiss [doc. #10, pp. 14-15].

Under Louisiana law, a plaintiff bringing a breach of contract claim must prove (1) the defendant undertook an obligation to perform; (2) the defendant failed to perform; and (3) that failure resulted in damages to the plaintiff. *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th 2018) (quoting *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. App. 4th Cir. 2011)).

As a threshold matter, in conducting Rule 12(b)(6) analysis in the instant matter, it is proper to consider not just the Complaint but also the Contract because the latter has been incorporated into the former through reference. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (courts reviewing a motion to dismiss for failure to state a claim must consider the complaint in its entirety as well as documents incorporated into the complaint by reference).

The core of DeSoto's breach of contract claim is the allegation that 4 Star "failed to perform the full scope of work" contemplated in the Contract. Looking to the instrument itself, 4

Star was obliged to conduct a damage review of the Property and submit an estimate for the scope of work required to return that Property to its pre-damaged state. *See* Contract [doc. #5-3, p. 2] (4 Star agreed to "[c]reate an estimate for the required scope of work (which may form the basis for the Final Scope of Work) at a fair market price to return the property to its pre-damages condition at acceptable industry standards[.]"). In short, DeSoto alleges that 4 Star breached the Contract by not returning the Property to its pre-damaged state as scoped and priced in its estimate.

However, the Contract does not oblige 4 Star to perform construction services. Rather, any obligation to engage in construction or repair is contemplated as arising from a separate instrument. The text of the Contract makes clear that DeSoto will both (a) "authorize [4 Star] to perform the final Scope of Work" and (b) "agree to enter into a Construction Agreement with [4 Star] *for performance thereof*." *Id.* (emphasis added). This is to say that while DeSoto was obliged to use 4 Star as its contractor for repairing the Property, the specific obligations associated with that repair project were to be set forth in a separate "Construction Agreement."

4 Star's obligations under the Contract extend only as far creating an estimate; it has no obligation under the document at issue here to perform the work contemplated in that estimate.[2] As the Contract does not require 4 Star to perform the project outlined in the full scope of work, it is implausible – indeed impossible – that 4 Star could have committed a breach by failing to

---

[2] DeSoto itself alleges that 4 Star complied with its existing obligations. Amended Complaint [doc. #5, pp. 4-5] ("Pursuant to the Contract, 4 Star performed an inspection, created a full scope of damage to the Property and engaged in communication with DeSoto's insurer . . . . 4 Star [later] submitted a supplemental estimate to [the insurer] . . . .").

perform that non-existent obligation.³ DeSoto has thus failed to sufficiently plead that 4 Star undertook an obligation that it subsequently failed to perform.

Accordingly, it is RECOMMENDED that 4 Star's motion to dismiss be granted to the extent that it challenges DeSoto's breach of contract claim.

b.  *Fraud in the Inducement*

DeSoto also contends that 4 Star is liable for fraud in the inducement arising from "misrepresent[ation] and/or suppress[ion] (whether by affirmative statement(s) or through silence) [of] all applicable terms and conditions associated with the Contract . . . ." Amended Complaint [doc. #1, p. 7]. 4 Star argues that DeSoto has insufficiently pleaded this claim due to its failure to specify the circumstances surrounding the alleged fraud. Memorandum in Support of M/Dismiss [doc. #10, pp. 6-10]. Absent dismissal of this claim, 4 Star requests an order for a more definite statement concerning the alleged fraud. *Id.* at pp. 10-11.

Under Louisiana law, fraud involves three elements: (a) a misrepresentation, suppression, or omission of true information; (b) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (c) the error induced by the fraudulent act relates to a circumstance substantially influencing the victim's consent to a contract. *Colonial Oaks Assisted Living*, 972 F.3d at 692; *Shelton v. Standard/700 Associates*, 798 So.2d 60, 64 (La. 2001). A plaintiff alleging fraud must also comply with Federal Rule of Civil Procedure 9(b) by plausibly pleading facts establishing the time, place, and contents of the false representation, the identity of the person making the misrepresentation, and what that person obtained thereby. *IAS Serv. Grp., L.L.C.*, 900 F.3d at 647.

---

³ Relatedly, 4 Star is right to observe that "construction cost overages cannot possibly be an issue when [DeSoto] claims construction never occurred." Memorandum in Support of M/Dismiss [doc. #10, p. 14].

Here, DeSoto alleges that 4 Star misrepresented the scope of the Contract. Amended Complaint [doc. #5, p. 7]. While not explicitly stated, the plausible presumption is that the misrepresentation occurred during negotiation of the Contract in April 2022. *See id.* at pp. 3-4 (describing negotiation of the Contract and identifying certain terms of the same). This covers the who, what, and when of the fraud claim; things get more complicated dealing with the how.

DeSoto alleges that the Terms and Conditions "are not a part of the Contract and were not executed, acknowledged or received by DeSoto," *id.* at p. 6, meaning those terms and conditions were not consented to nor incorporated into the Contract. Simultaneously, DeSoto alleges that 4 Star misrepresented "all applicable terms and conditions associated with the Contract," *id.* at p. 7, which is to say that the Terms and Conditions *were* consented to by DeSoto due to fraud and were included in the Contract on that basis. In short, DeSoto has alleged both that that the Terms and Conditions were not included in the Contract and that the Contract (fraudulently) included the Terms and Conditions. These allegations are irreconcilable based on the pleadings as they currently stand.

DeSoto further muddies the waters by arguing in its opposition memorandum that, "*as an alternative claim* should the Court find that the Terms and Conditions are part of the Contract, . . . any agreement to the Terms and Conditions by DeSoto was obtained through 4 Star's fraudulent actions . . . ." Opposition to M/Dismiss [doc. #16, p. 18] (emphasis added). By figuring this as an argument in the alternative, DeSoto essentially admits that it has not pinned down a theory of fraud. If the fraudulent inclusion of the Terms and Conditions in the Contract is DeSoto's *alternate* theory of fraud, then the *primary* theory must be that the Terms and Conditions were never in the Contract but were later asserted against DeSoto anyway. The latter theory does not state a claim for fraudulent inducement because it presupposes that there was

9

never a misrepresentation (i.e., the Terms and Conditions were not represented as part of the contract prior to execution) and there was thus no erroneous understanding of the Contract's terms by which DeSoto was influenced to execute the document.

The vagueness of the pleadings associated with DeSoto's fraud claim and the uncertainty thereby created makes these pleadings ripe for amendment.[4]  An opportunity to better plead this claim will enable DeSoto to clearly identify a single theory of fraud in the inducement, allowing for a fulsome defense and accurate adjudication.

Accordingly, it is RECOMMENDED that 4 Star's motion for a more definite statement be granted and DeSoto be ordered to file an amended complaint to address the deficiencies of its fraud claim identified *supra*.  It is FURTHER RECOMMENDED that 4 Star's motion to dismiss be denied to the extent that it attacks DeSoto's fraud in the inducement claim.

c.   *Declaratory Relief*

The undersigned last turns to DeSoto's claim for declaratory judgment.  4 Star attacks that request on two bases: (a) The claim is not ripe, so this court lacks subject matter jurisdiction to adjudicate it; and (b) the question posed for declaratory judgment will necessarily be resolved in the context of the underlying breach of contract claim, rendering the need for such judgment redundant.  Memorandum in Support of M/Dismiss [doc. #10, pp. 11-14].  As the first argument is jurisdictional, the undersigned addresses it first.

---

[4] 4 Star has moved in the alternative for a more definite statement of the fraud claim should this court decline to dismiss said claim.  Memorandum in Support of M/Dismiss [doc. #10, pp. 10-11].  DeSoto has similarly requested an opportunity to amend the Complaint to support the claim.  Opposition to M/Dismiss [doc. #16, pp. 18-19].

i.  Ripeness

4 Star first contends that DeSoto's request for declaratory judgment is not ripe, thus denying this court jurisdiction to adjudicate it. *Id.* at pp. 13-14.

Federal courts are empowered to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[5] This power is understood to give courts "unique and substantial discretion" in determining whether to declare the rights of litigants. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). However, "[t]he fact that a court *can* enter a declaratory judgment does not mean that is *should*." *Hewitt v. Helms*, 482 U.S. 755, 762 (1987); *see also Wilton*, 515 U.S. at 289 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). When considering a declaratory judgment claim, district courts engage in a three-step inquiry. First, they determine whether the action is justiciable (i.e., whether the court has jurisdiction). *Orix Credit All. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Second, if the court has jurisdiction, the courts must resolve whether it has the authority to grant declaratory relief. *Id.* Finally, the court must determine how to exercise its discretion to decide or dismiss the declaratory judgment action. *Id.*

Challenged here is the first prong: the justiciability of DeSoto's declaratory judgment action. This analysis turns on the ripeness of the claim.[6] The ripeness of a matter turns on (a)

---

[5] Declaratory judgments pursuant to section 2201 "have the force and effect of a final judgment or decree" and are reviewable as such. *Id.*

[6] As ripeness is ultimately a question of jurisdiction, *see id.* ("Ripeness is a constitutional prerequisite to the exercise of jurisdiction."), Federal Rule of Civil Procedure 12(b)(1) provides the proper analytical framework for reviewing challenges on that basis.

11

the fitness of the issues for judicial decision and (b) the hardship to the parties of withholding adjudication. *Braidwood Mgmt., Inc. v. E.E.O.C.*, 70 F.4th 914, 930 (5th Cir. 2023).[7] A claim is "fit for judicial decision" if it presents a pure question of law requiring no further factual development. *Id.*; *see also Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (a claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all."). This determination is made on a case-by-case basis. *Orix Credit All.*, 212 F.3d at 896.

Here, the requested declaratory judgment turns on a legal question: Whether the Terms and Conditions are part of the Contract. *See Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 677 (5th Cir. 2023) ("The interpretation of a contract is a question of law."). While there is need for additional facts to resolve this question (i.e., discovery), there is no need for further factual *development* as the relevant facts are not contingent upon future events.[8] As such, DeSoto's declaratory judgment claim is fit for judicial decision and is ripe.[9]

---

[7] The Fifth Circuit has acknowledged that the ripeness doctrine "exists in some tension with the concept of declaratory judgment." *Id.* In short, a court accounts for both concepts when it assesses whether an actual or immediate controversy between the parties exists or remains abstract and hypothetical. *Id.*

[8] Precedent indicates that "further factual development" refers to the occurrence of events upon which the controversy underlying the declaratory judgment claim turn. *See, e.g.*, *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (finding factual development insufficient for claim seeking declaratory judgment to prevent use and disclosure of data pursuant to regulation when such data had nether been used nor had parties failed to otherwise resolve putative violation of said regulations). To stem off potential arguments to the contrary, the undersigned observes that it would be curious for dismissal of declaratory judgment claims to be predicated on the need to engage in discovery. Imposing such a requirement would leave parties to argue and courts to adjudicate without a fully developed factual universe.

[9] The parties have not made arguments concerning hardship arising from withholding declaratory judgment, so analysis concerning that issue would be inappropriate.

4 Star appears to argue that DeSoto's claim is properly analyzed under the Louisiana declaratory judgment law, not its federal counterpart. Reply to Opposition to M/Dismiss [doc. #17, pp.1-2] ("Although [DeSoto] refers to federal authority in various jurisdictions regarding declaratory judgment, that authority does not address claims for declaratory relief under Louisiana law, which is the jurisdiction under which Plaintiff's claim is filed."). The undesigned disagrees on two bases. First, a request for declaratory judgment is not an independent basis for jurisdiction, but rather a form of relief. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy *within its jurisdiction* . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." (emphasis added)); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.3d 599, 601 (5th Cir. 1983) (28 U.S.C. § 2201 "confers no jurisdiction but is a procedural device designed to provide a new remedy to the federal court arsenal.").[10] The court's jurisdiction to grant declaratory judgment is derived not from the request for such judgment, but from the controversy to be resolved by it. Here, the underlying contract dispute is properly before the court on the – unchallenged – basis of diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Declaratory judgment pursuant to that jurisdiction is proper for the reasons discussed *supra*. In short, DeSoto has requested declaratory judgment under federal jurisdiction, not Louisiana state jurisdiction as 4 Star argues. Second, 4 Star's argument that the request for declaratory relief is pursuant to Louisiana law is inconsonant with other points it makes concerning this claim. Specifically, 4 Star itself cites federal law as the basis of its arguments against this court's

---

[10] 4 Star itself makes this point. *See* Memorandum in Support of M/Dismiss [doc. #10, pp. 11-12] (quoting *Fisher v. Beers*, No. 13-6632, 2014 WL 3497572, at *4 (E.D.La. July 14, 2014) (describing declaratory judgment as "a remedy available to a litigant who can point to an existing right that the court has jurisdiction to enforce.")).

jurisdiction over the declaratory relief claim. *See* Memorandum in Support of M/Dismiss [doc. #10, pp. 5-6] (describing rules associated with 28 U.S.C. § 2201); Memorandum in Support of M/Dismiss [doc. #10, p.13] (citing decisions of the Fifth Circuit Court of Appeals enunciating the standard for ripeness). 4 Star cannot pick and choose when a corpus of law applies and when it does not. As the claim is ripe and this court has jurisdiction, there are no remaining issues before the undersigned concerning this court's authority to render declaratory judgment.

Accordingly, dismissal of DeSoto's declaratory judgment claim under Rule 12(b)(1) is inappropriate.

ii.     Redundancy

4 Star makes a second argument against DeSoto's declaratory judgment claim, contending that the request should be dismissed as redundant of the underlying breach of contract claim. Memorandum in Support of M/Dismiss [doc. #10, pp. 11-13].

Trial courts in the Fifth Circuit have held that if the substantive claims in a case "require resolution of the same issues that [the plaintiff] seeks to establish through a declaratory judgment," then the separate declaratory relief may be dismissed on account of redundancy. *See, e.g.*, *Siboney Cont. Co. v. Berkley Ins. Co.*, No. 17-9681, 2018 WL 1123624, at *3 (E.D.La. Feb. 28, 2018). In cases where the underlying substantive claim is for breach of contract, dismissal on the basis of redundancy is appropriate when a plaintiff "would get nothing from a declaratory judgment that they would not get from prevailing on [the underlying claim]." *Jones v. Gooden*, No. 21-372, 2022 WL 1286231, at *2 n.27 (M.D.La. Feb. 25, 2022), *report and recommendation adopted*, 2022 WL 944288 (M.D.La. Mar. 29, 2022); *accord Carter v. H2R Rest. Holding, LLC*, No. 3:16-cv-1554, 2017 WL 4573698. At *12 (N.D.Tex. Aug. 23, 2017), *report and*

14

*recommendation adopted*, 2017 WL 4548313 (N.D.Tex. Oct. 12, 2017); *Fisher*, 2014 WL at 4; *Scritchfield v. Mutual of Omaha Ins. Co.*, 341 F.Supp.2d 675, 682 (E.D.Tex. 2004).

At this stage of litigation, DeSoto cannot prevail on the underlying claim because it has been dismissed for failure to state a claim; it is self-evident that anything DeSoto could get by prevailing on the declaratory judgment claim could not be obtained via the breach of contract claim. While 4 Star does not make any argument concerning the redundancy of DeSoto's declaratory judgment and fraud claims, there is a likelihood of overlap between the two. However, the extent of that overlap cannot be determined until the fraud claim has been amended as discussed *supra*. It would thus be improper to adjudicate the redundancy of these claims until after said amendment.

Accordingly, it is RECOMMENDED that 4 Star's motion be denied to the extent that it seeks dismissal of DeSoto's declaratory judgment claim.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to dismiss [doc. #9], be **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's claim for breach of contract be **DISMISSED WITHOUT PREJUDICE** and Plaintiff be **ORDERED** to amend its pleadings to correct the deficiencies of its fraud in the inducement claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 8th day of December, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE